RENDERED: APRIL 7, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0117-MR

JEREMY KENDRICK                                           APPELLANT

               APPEAL FROM MCCRACKEN CIRCUIT COURT
v.               HONORABLE TIMOTHY KALTENBACH, JUDGE
                         ACTION NO. 18-CR-00061

COMMONWEALTH OF KENTUCKY                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Jeremy Kendrick appeals from the McCracken Circuit Court's decision to revoke his probation. We affirm.

In 2018, Kendrick and the Commonwealth reached a plea agreement whereby Kendrick would plead guilty to two counts of criminal possession of a forged instrument, would receive concurrent twenty-five-month sentences on each count, and would apply for drug court. Kendrick did not appear at sentencing, so

the trial court issued a bench warrant.  It later came to light that Kendrick was receiving residential treatment for his substance addiction on the sentencing date.  Kendrick said he informed someone at the facility of the sentencing date but, for reasons not apparent from the face of the record, arrangements were not made for him to appear.

The trial court eventually sentenced Kendrick to concurrent twenty-five-month sentences on each charge, to be probated for five years.  Among the conditions of probation were Kendrick's completing drug court in Graves County and thereafter "[r]efrain[ing] from violating the law in any respect" and complying with the rules and regulations of the Department of Probation and Parole.

Less than a year later, the Commonwealth sought a hearing on whether Kendrick's probation should be revoked because he had failed to report to his probation officer as directed, had received a misdemeanor conviction, and had left the area without the officer's permission.  Pursuant to Kendrick and the Commonwealth's agreement, the trial court issued an order which required Kendrick to receive addiction treatment again.  The order also explicitly kept in place all the other original conditions of probation.

A little over a year later, the Commonwealth filed a motion seeking to revoke Kendrick's probation.  Attached to that motion was a report completed by Kendrick's probation officer which said Kendrick had admitted to recently

using drugs. The report also said that Kendrick had agreed to undergo treatment but failed to comply with the officer's directive to go to the treatment facility. The report stated that the officer believed Kendrick posed a risk to himself and others and thus sanctions less than revocation would not be appropriate. The trial court then issued a bench warrant for Kendrick.

The Commonwealth later filed a notice that Kendrick had been arrested in Tennessee on what was described as a felony charge of possession of methamphetamine. Attached to the notice was a report from Kendrick's probation officer recommending that Kendrick's probation be revoked. The Commonwealth later filed a copy of a Tennessee judgment which states that Kendrick had pleaded guilty to the *misdemeanor* offense of possession of methamphetamine.

The trial court held an evidentiary hearing on whether to revoke Kendrick's probation in November 2021. Kendrick's probation officer testified as to Kendrick's failures to comply with the terms of his probation. Kendrick also testified but he did not meaningfully dispute the officer's testimony about Kendrick's noncompliance. Soon thereafter, the trial court issued an order revoking Kendrick's probation. The order states that lesser sanctions were not appropriate because Kendrick presented a significant risk to the community at large and could not be appropriately managed in the community. Kendrick then filed this appeal.

We review a trial court's probation revocation decision under the deferential abuse of discretion standard. *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015). A decision is an abuse of discretion if it is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citations omitted). In short, "we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *Id.*

Kentucky Revised Statute (KRS) 439.3106(1)(a) requires a court to make two findings before revoking probation: 1) the supervised individual must be "a significant risk to prior victims . . . or the community at large"; and 2) the supervised individual "cannot be appropriately managed in the community[.]" A court must make both findings before revoking probation but retains the discretion to choose whether to revoke probation or impose lesser sanctions. *McClure*, 457 S.W.3d at 732; *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014).

Here, the trial court made both mandatory findings. And it is uncontested that Kendrick failed to comply with the conditions of his probation. Nonetheless, Kendrick argues that the trial court erred by revoking his probation.

First, it is unquestioned that Kendrick repeatedly failed to comply with the terms of his probation. He did not always report to his probation officer as directed. He continued using illegal drugs. He did not comply with the

probation officer's directive to report to treatment. He left Kentucky without authorization and pleaded guilty to a misdemeanor offense in Tennessee.[1]

Second, the trial court made the two statutorily required findings. We disagree with Kendrick's assertion that the findings were fatally perfunctory. First, the trial court provided some degree of detail by listing some of Kendrick's violations in the revocation order. Second, a court is only required to make the statutory findings, not explain them. *New v. Commonwealth*, 598 S.W.3d 88, 90 (Ky. App. 2019) ("A trial court is not required to provide explanations for those [KRS 439.3106] findings; instead, it must only make the findings, which must be supported by the evidence of record.") (internal quotation marks and citation omitted).

Kendrick relies on our often misconstrued statement in another published case that "perfunctorily reciting the statutory language in KRS 439.3106 is not enough." *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky. App. 2015).

---

[1] The trial court erroneously stated in the revocation order that Kendrick was convicted of a felony in Tennessee. However, that error is harmless because Kendrick violated the terms of his probation by receiving *any* criminal conviction at all. Moreover, even if the Tennessee conviction were disregarded, there were ample additional grounds for revocation – some of which the trial court listed in the revocation order. Because the error in referring to the Tennessee conviction as a felony had no impact on the propriety of the revocation decision, it must be harmless. *See* Kentucky Rule of Criminal Procedure (RCr) 9.24 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.").

Perhaps our language about perfunctory recitations was imprecise, but *Helms* does not afford Kendrick relief.

In *Helms*, we explained that there was "a complete lack of evidence" that Helms was "a danger to a prior victim or to the community and he cannot be appropriately managed in the community . . . ." *Id.* We stressed the insufficient evidence, notwithstanding the trial court's perfunctory regurgitation of the findings required by KRS 439.3106:

> If the penal reforms brought about by HB [House Bill] 463 are to mean anything, perfunctorily reciting the statutory language in KRS 439.3106 is not enough. There must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met.

*Helms*, 475 S.W.3d at 645.

In other words, we cannot affirm the revocation of probation simply because the revocation order contains the requisite statutory findings. A revocation unsupported by evidence of record would not be "within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure*, 457 S.W.3d at 730. Instead, we may affirm a decision to revoke probation only if: a) the court made the required findings, *and* b) those findings are supported by the record. We emphatically reiterate that *Helms* does not mean that a court must provide detailed explanations for the findings required by KRS

439.3106. *New*, 598 S.W.3d at 90 ("New's seeming argument to the contrary notwithstanding, we did not require detailed findings in *Helms . . . .*").

We now examine whether the record contains evidence sufficient to support the decision to revoke Kendrick's probation. Kendrick's arguments to the contrary notwithstanding, it does. As to his being a significant risk, Kendrick absconded, continued to use illegal drugs, and pleaded guilty to a drug-related offense in Tennessee. As to his inability to be appropriately managed in the community, Kendrick continued to use drugs, failed to meet with his probation officer, and failed to comply with the officer's directives. In fact, the officer's testimony at the revocation hearing that Kendrick presented a danger to himself or others and could not be appropriately managed in the community was not meaningfully challenged. *Compise v. Commonwealth*, 597 S.W.3d 175, 182 (Ky. App. 2020) (holding that "a defendant who will not cooperate with the conditions of her supervision may indeed constitute a significant risk to the community at large and be unmanageable in the community"); *New*, 598 S.W.3d at 90-91 (holding that a probationer's usage of drugs and submission of false paperwork to a drug court satisfied the statutory factors). In sum, this is not an instance where the trial court mechanically made findings unsupported by the record.

Finally, Kendrick seemingly argues the trial court had to impose lesser sanctions in lieu of revocation. Citing information from the National

Institutes of Health, Kendrick argues that relapses are common and so his addiction would have been better addressed with additional treatment, not incarceration.

"Nothing in the statute or in the Supreme Court's interpretation of it *requires* the trial court to impose lesser sanctions prior to revoking probation." *McClure*, 457 S.W.3d at 732. We do not diminish Kendrick's addiction or the difficulty of attempting to overcome it. However, the issue is not whether some other sanction would have allowed Kendrick better treatment opportunities. The question is whether Kendrick engaged in behavior sufficient to satisfy the statutory requirements for revocation. He clearly did, and the trial court explicitly stated in the revocation order that sanctions other than revocation would be inappropriate. Thus, "[o]ur proper role is merely to evaluate the sufficiency of the evidence and whether an abuse of the trial court's discretion occurred. To hold, or to do, otherwise would be to invade the province of fact finding best occupied by our trial courts." *Id.* at 734.

In sum, the trial court's decision to revoke Kendrick's probation was well within the "range of permissible decisions allowed by a correct application of the facts to the law." *Id.* at 730. Therefore, we affirm.

For the foregoing reasons, the McCracken Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Karen Shuff Maurer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky